*W. S. B. Hopkins & S. Haynes*, for the plaintiff.

---

CHARLES W. WHITNEY, administrator, *vs.* JAMES CLARY.

Worcester.    October 3. — 20, 1887.    C. ALLEN & KNOWLTON, JJ., absent.

In an action on a promissory note, payable to A. and purporting to be signed by B. by his mark and to be witnessed, on the issue of the genuineness of the defendant's signature, the attesting witness testified that A. and B. were in the room adjoining the one he was in, the door being ajar; that A. wrote the note and read it to B.; that he was then called in to witness the note; that A. said, " This is B. who is giving his note, and I want you to witness it; " and that the witness then took the pen out of B.'s hand, read the note, and then witnessed it. *Held*, that the testimony was sufficient to warrant the jury in finding that B. duly signed the note.

When the signature to a promissory note is proved, the note itself is *prima facie* evidence of consideration.

In an action on a promissory note, to which the defence was want of consideration, it appeared that the payee held a note of a son of the maker, and that the maker was the administrator of his son's estate and his only heir, and gave the note in suit in renewal of the old note. *Held*, that, even if the old note could not have been enforced at law at the time the new note was given, there was sufficient evidence of consideration for the new note.

CONTRACT, by the administrator of the estate of John H. Davis, upon a promissory note for $378, dated at Sterling on March 16, 1883, payable to the order of said Davis, purporting to be signed by the defendant by his mark, and to be witnessed by Susan P. Goodell, and containing the words "for value received." The note bore the following indorsement: "March 16, 1883, received $7." Writ dated August 5, 1886. Answer: 1. A general denial. 2. A denial of the genuineness of the signature. 3. Want of consideration.

Trial in the Superior Court, before *Pitman*, J., who allowed a bill of exceptions, in substance as follows:

The plaintiff proved his appointment as administrator of the estate of John H. Davis, and testified that he found the note in suit among the papers of the intestate.

Susan P. Goodell testified as follows: " I kept house for John H. Davis, at Sterling, from 1881 to 1885. James Clary came to the farm at Sterling where Davis lived. They were in the dining-room adjoining the kitchen. I was in the kitchen, and the door was ajar between the rooms. Davis wrote the note. I heard him read it to Clary, then he stepped to the door and wanted me to put my name on the note to witness it. I went in there. I remember I took the pen out of Clary's hand and wrote with the same pen. I did not see Clary do anything with the pen. Davis said, ' This is Mr. Clary, William's father, who is taking up William's note, giving his, and I want you to witness it.' I signed the note. I read the note before I witnessed it. It was in the same condition then as now."

On cross-examination, the witness testified as follows: " Davis told me it was a renewal of William Clary's note. Davis said he wanted a renewal because William had died. I do not remember that James Clary said anything. After I signed the note I immediately left the room. I was in the room only a short time. I do not know of any money being paid that day. I knew the amount of the note at the time, but have forgotten it. I cannot testify to anything upon the note other than my handwriting. The rest of the note other than my name is in Davis's handwriting."

This was all the material testimony offered by the plaintiff to prove the signature to the note. The plaintiff then offered the

note in evidence. The judge allowed the note to be put in evidence against the defendant's objection. The plaintiff then rested his case.

The defendant then testified as follows: " I did not know Davis till my boy William went to work for him eleven or twelve years ago. All the dealing I ever had with Davis was when I went to see my boy, and bought a cow, and gave my note for $50. I could not pay this note all at once, so I paid it in two payments. I think I paid $40 the first time, and gave him a new note for the balance, and he kept it till I paid the balance; it was for the cow. I never signed a note for the renewal of William's note. Saw Davis when I paid the balance for cow. I did not see Mrs. Goodell, and saw no one in the room. I did not stay long. I never got any money from Davis. I never saw Susan P. Goodell at Davis's house, and never knew of her witnessing any note or other instrument signed by me. My son's name was William Henry Clary. He died ten years ago last April. William borrowed $400 from Davis, and gave his note, and used the money in building a house upon real estate owned by him. I do not know if Davis held this note when he died. I do not know what became of it. I have not received it from Davis since my son died. I never had any talk with Davis about this note before or since William died. The only transaction I ever had with him was when I bought the cow and gave a note for it. I did not go there any time when Davis wrote a note and read it to me. Nothing was said to me about taking up William's note. I was the administrator of William Clary's estate. The date of administration was April 18, 1876.

The defendant then put in evidence the letter of administration on William H. Clary's estate, but there was no evidence of any further probate proceedings after the issuing of the letter of administration. It appeared that the defendant was the only heir of his son William, who, at the time of his decease, owned the real estate upon which he had used the money lent him by Davis. There was evidence that shortly before this action was brought, and since the death of Davis, the defendant had conveyed certain real estate to one of his sons for a nominal consideration.

This was all the material evidence offered to prove consideration of said note.

The defendant asked the judge to rule that the plaintiff had not offered any evidence which would warrant the jury in finding that there was any consideration for said note, or that would warrant a verdict for the plaintiff. The judge declined so to rule, and submitted the case to the jury, with instructions as to the *prima facie* proof supplied by the note itself if its execution was proved, as to the burden of proof, and as to the right of the jury to determine upon the whole case the evidential value of this *prima facie* proof; which instructions were not excepted to.

The jury returned a verdict for the plaintiff for the amount of said note and interest; and the defendant alleged exceptions.

*J. W. Corcoran & T. F. Gallagher,* for the defendant.

*A. Norcross & H. C. Hartwell,* (*C. F. Baker* with them,) for the plaintiff.

MORTON, C. J. The testimony of the witness Goodell, if believed, was sufficient to justify the jury in finding that the note in suit was duly signed by the defendant, and that it was attested by the witness, with the knowledge of the defendant, and as a part of the same transaction with the making of the note. *Swazey* v. *Allen,* 115 Mass. 594, and cases cited. The defendant contradicted this witness, but it was for the jury to decide which was entitled to credit.

The signature of the defendant and the delivery of the note having been proved, the note itself was *prima facie* evidence of consideration.

But in this case there was evidence which would justify the jury in finding that the note in suit was given to take up and cancel an old note signed by the defendant's son and held by the plaintiff's intestate. The surrender of this note, even if it could not be enforced at law, was a sufficient consideration for the new note. *Wilton* v. *Eaton,* 127 Mass. 174. The case before us is much stronger in favor of the plaintiff than was the case of *Wilton* v. *Eaton.* In the case at bar, the defendant was the administrator and only heir of his son. He filed no bond as administrator, and nothing appears to show that his son's note, at the time of its surrender, could not be enforced against his estate. *Exceptions overruled.*